IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL C. AMOROSO        *
  Petitioner,
   v.              *    CIVIL ACTION NO. WMN-05-2894

NANCY ROUSE, et al.        *
  Respondents.
                ***

**MEMORANDUM**

Currently pending is Michael C. Amoroso's ("Petitioner") 28 U.S.C. § 2254 attack on his 2003 drug distribution and possession convictions in Allegany County Circuit Court. Paper No. 1. Respondents have filed an Answer to the Petition and Petitioner has filed a Reply. Paper Nos. 10 and 12. After review of pleadings and exhibits, the court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C. § 2254(d) & (e)(2). For reasons to follow, the Petition is hereby denied and dismissed with prejudice.

**I. Procedural History**

On November 15, 2002, criminal information was filed charging Petitioner with multiple counts of cocaine distribution and possession. Paper No. 10, Ex. 1. Trial was held on February 26 and February 27, 2003, with Allegany Circuit Court Judge Gary G. Leasure presiding. The facts adduced at trial by the Court of Special Appeals of Maryland are as follows:

> The convictions in this case arose from five separate sales of cocaine by appellant to Franklin White, Jr., a confidential informant, during a one-month period in the summer of 2002. At the two-day jury trial, the evidence established that, in June 2002, White contacted the Narcotics Task Force of the Maryland State Police, stating that "he could purchase powder cocaine from appellant." Corporal Richard Sivic, Jr. testified that the following procedures occurred each time White purchased cocaine from appellant.
>
> White would contact appellant and arrange a time and place to purchase the cocaine. Prior to each purchase, White would meet the task force, who would search White and his vehicle to ensure that he was not in possession of any drugs. White

would receive "serial number recorded currency" to purchase the cocaine and be outfitted with a body-wire so the task force could "overhear the conversation and record it." White would drive his vehicle to each purchase and the task force would follow, conducting surveillance. After each transaction, the task force would follow White to a prearranged location, search White and his vehicle, and retrieve the purchased cocaine.

At 6:35 p.m. on June 18, 2002, White met Sivic, Patrolman Mark Pfaff, and Corporal Anthony Rumgay at the Park & Ride in Frostburg. Sivic searched White and Pfaff searched White's vehicle, finding no drugs. A body-wire was placed on White and he was given $300 to purchase the cocaine. The officers followed White to the LanaLu apartments in Lanaconing. Rumgay was "dropped off....on the street" across from the apartments and Sivic and Pfaff "sat in [a nearby] church parking lot." Rumgay observed appellant walk from the front of the apartments to an adjacent alley. According to White, he drove down the alley and purchased cocaine from appellant. Sivic testified that White was "out of our sight" for approximately two minutes and that none of the officers witnessed the transaction. The officers followed White to the Park & Ride where he was searched and the cocaine was recovered.

On June 21, White contacted Sivic, stating that he was meeting appellant that evening at the McDonald's in Westernport. Sivic and Sergeant Paloucci met White at the Park & Ride "on Route 36," with Sivic searching White and Paloucci searching the vehicle. A body-wire was placed on White and he was given $300 to purchase the cocaine. The officers followed White and parked in a carwash next to the McDonald's. Between 9:00 and 9:30 p.m., Sivic observed a "black Chevy Blazer," which was registered to appellant, enter the parking lot. According to Sivic, White "told us on the wire" that appellant wanted White "to follow." Sivic did not immediately follow appellant and White when they pulled out of the parking lot because

> there wasn't very much traffic that evening. I was acting as if I was cleaning my car then, and it would have appeared very weird if I would have, as soon as they started pulling out of McDonald's, if I would have pulled out right behind them, because it is right next to each other, and we were standing where they could see us, obviously, because we needed to see this guy.

Sivic testified that "we waited a few seconds and then pulled out." When they "got turned around....the deal had already been completed, so [they] didn't know where it actually had taken place, at that point." Sivic testified that White was out of sight for "less than two minutes."

White testified that he followed appellant to a church "off of Washington Street" and appellant "[came] up. I show[ed] him how much money I [had]. He [gave] me the stuff and I [drove] off." After the purchase, White told the officers to

2

meet him at Tri-Towns Plaza.  The officers searched White and his vehicle and recovered the cocaine.

Another sale occurred on June 25, 2002, at the McDonald's in Westernport. Sivic and Pfaff met White at "the church in Potomac Park."  Sivic searched White and Pfaff searched the vehicle.  A body-wire was placed on White and he was given $200 to purchase the cocaine.  The officers followed White, parking on an access road "directly across from the McDonald's parking lot."  At approximately 5:53 p.m., Sivic observed appellant "pull into the parking lot directly next to [White's] vehicle."  White exited his vehicle and "walked over to the driver's side of [appellant's] vehicle, leaned in.  A short conversation ensued and [White] then got back into his vehicle."  White testified that, after appellant "pulled in," White "got out of [his] vehicle, went up to [appellant's] window, [and got] the cocaine."  The officers and White met at Tri-Towns Plaza, with the officers searching White and the vehicle and recovering the cocaine.

On July 3, 2002, while Sivic was on vacation, White arranged to meet appellant, again, at the McDonald's in Westernport.  Rumgay, Sergeant Jason Merritt, Pfaff, and Deputy Randy Cutter met White at Tri-Towns Plaza, where he was searched, equipped with a body-wire, and given cash to purchase the cocaine. While Cutter and Pfaff drove ahead to Westernport to set up surveillance, Rumgay and Merritt followed White.  Merritt testified that, while leaving Tri-Towns, he observed appellant drive by in the opposite direction.  White "pulled right over, got out of the vehicle, walked up to [appellant's] vehicle."  When Merritt activated the body-wire, the "conversation was already taking place and purchase had already occurred.  We were able to drive by as it was happening."  Merritt acknowledged the he did not observe the "hand to hand transaction."  Rumgay observed White's "hands go inside the window frame of [appellant's ] vehicle, " but he did not see who was sitting in the driver's seat of the vehicle.  White testified that he "handed in the money" to appellant to get the cocaine.  Afterwards, the officers searched White and the vehicle and recovered the cocaine.

The final transaction, involving a "re-up," occurred on July 19, 2002.  Sivic testified that White

> told us that he would give [appellant] the money and at a later time, [appellant] had to go....we call it re-up. [Appellant] had to go get more cocaine, so he was going to use our money to go get more, and then he would meet with [White] later that evening, when he got back with it.

Meeting at Tri-Towns Plaza, the officers searched White and his vehicle, placed a body-wire on him, and gave him $350.  At 7:31 p.m. White met appellant at the Westernport Store and gave him the money.   The officers followed White back to Tri-Towns and searched him to "make sure that he had given out money to" appellant.

3

At 10:30 p.m., the officers met White at Tri-Towns and again searched him and his vehicle and placed a body-wire on him. Sivic testified that, at approximately 11:53 p.m., White went to the Redman Club, and "we parked across the street at another parking lot and observed [appellant's] Blazer pull in next to" White. Although Sivic could observe a male inside the Blazer, he could not "say that it was" appellant because it was dark outside. After the transaction, the officers followed White to Tri-Towns, where he was searched and the cocaine was recovered. White testified that when appellant "pulled up" at the Redman Club, White "got out" of his vehicle and appellant handed him the cocaine.

Sivic testified that in March 2000 he had filed charges against White for making a false statement. White acknowledged that he had used narcotics in the past and "sometimes" used "that to his advantage" when making controlled purchases for the police. White's prior convictions included forgery, uttering a false document, and the sale of marijuana and methamphetamine.

At the close of the State's case, appellant's counsel moved for judgment of acquittal of all of the charges, arguing: "I don't think the level of proof is such that is should go, to put the defense to the burden of putting on a defense at this point." Finding that the State had "presented sufficient evidence," the circuit court denied the motion.

Appellant was the only witness in his case. He testified that he had not sold cocaine to White. According to appellant, White was lying because

> [t]here [had been] a confrontation between [White] and a close friend of mine in a bar one evening, approximately around June 15th, in which he was, I guess, embarrassed in front of everybody, and since then, that's why I figure why he did it.

Appellant acknowledges that he had met White "several times," but stated that White would "just appear. There was no planned contact." For example, on June 18, appellant testified that White stopped by LanaLu Apartments to "say hi." On June 21, appellant "rode through McDonald's....to get some food at the drive-thru" and White "[came] up behind [him] flashing his lights." On June 25, appellant went to McDonald's to retrieve tools that White had borrowed from him. On July 3, while appellant was driving "down 135 to Keyser," White "was going the opposite way and waved" appellant down.

At the close of all the evidence, appellant's counsel told the circuit court: "I just want to renew my motions, Your Honor." Again, the circuit court denied the motion.

Paper No. 10, Ex. 7, pgs. 1-7.

4

The jury convicted Petitioner of five counts each of possession of cocaine and distribution of cocaine.[1]  *Id.*, Ex. 3 at 33-35.   Petitioner received consecutive four-year terms, with all but two years suspended, for each distribution conviction.  *Id.*, Ex. 4 at 8.   The possession convictions were merged for sentencing purposes.  *Id.*, Ex. 4 at 8; Ex. 1 at 13.  A cumulative 10-year sentence was imposed.  *Id.*, Ex. 4 at 8.

On appeal to the Court of Special Appeals of Maryland, Petitioner claimed that the evidence was insufficient to sustain his convictions.  *Id.*, Ex. 5 & 6.  In an unreported opinion filed on April 16, 2004, the Court of Special Appeals of Maryland affirmed Petitioner's convictions.  *Id.*, Ex. 7. A petition for certiorari was not filed.

On June 3, 2004, Petitioner filed for post-conviction review in the Circuit Court for Allegany County.  *Id.*, Ex. 8.   An amended pro se petition was filed in September, 2004.  *Id.*, Ex. 9.  Finally, on September 24, 2004, Petitioner's counsel filed a supplemental petition.  *Id.*, Ex. 10.  The petitions raised various claims of ineffective assistance of counsel and prosecutorial misconduct. On October 12, 2004, a post-conviction hearing was held before Allegany County Circuit Court Judge W. Timothy Finan.  *Id.*, Ex.11.  On January 10, 2005, Judge Finan denied the petition.  *Id.*, Ex. 12. Petitioner's application for leave to appeal was denied by the Court of Special Appeals of Maryland on August 10, 2005.  *Id.*, Exs. 13-15.

Petitioner filed this § 2254 Petition on October 20, 2005.  Affording his pro se claims a generous construction, Petitioner claims that:

---

[1]  Petitioner was originally charged with thirteen counts, for six separate dates.  Paper No. 10, Ex. 2 at 44, 26.  Judge Leasure granted the motion for judgment of acquittal on count thirteen, a possession charge related to incidents occurring on September 13, 2002.  *Id.*, Ex. 2 at 206.  The State later agreed to formally dismiss counts eleven and twelve, distribution and conspiracy counts also relating to incidents occurring on September 13, 2002.  *Id.*, Ex. 2 at 234.

1. The state post-conviction court violated his right to due process by finding that Petitioner had waived his claim that trial counsel was ineffective due to his failure to request a jury instruction on the topic of the testimony of a paid informant;

2. The state post-conviction court violated *Brady v. Maryland*, 373 U.S. 83 (1976) and the Due Process Clause by finding that the prosecutor did not fail to disclose exculpatory evidence regarding a statement made by Petitioner;

3. The state post-conviction court erred in its findings that trial counsel was not ineffective for failing to move to sever the counts and to preserve the issue for appeal;[2]

4. The state post-conviction court erred in finding that the prosecution had not knowingly permitted perjured testimony to be admitted into evidence; and

5. The state post-conviction court incorrectly applied Supreme Court precedent to its analysis of his ineffective assistance of counsel claims.

Paper No 1.

## II. Threshold Considerations

**A. Exhaustion of State Remedies**

Under *Rose v. Lundy*, 455 U.S. 509 (1982), before a petitioner may seek habeas relief in federal court, he is required to exhaust each claim presented to the federal court by pursuing all available remedies available in state court. This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(b) and (c). In Maryland, this may be accomplished by proceeding with certain claims on direct appeal to the Court of Special Appeals (and thereafter seeking *certiorari* to the Court of Appeals) and with other claims by way of a post-conviction petition, followed by seeking leave to appeal from the Court of Special Appeals. Petitioner no longer has direct appeal or post-conviction

---

[2] Within the body of this ground, Petitioner seemingly claims that the post-conviction court erred in finding that evidence of each separate act of distribution would be mutually admissible in a separate prosecution, thus prejudicing his right to a fair trial. Paper No. 1.

remedies available in connection with the claims raised before this Court. He has exhausted the claims presented here.

**B. Statute of Limitations**

There is no contention that the Petition is time-barred pursuant to 28 U.S.C. §2244(d).

**C. Procedural Default**

In their Answer, Respondents assert that Petitioner is procedurally defaulted from asserting ground one, his claim that trial counsel rendered ineffective assistance by failing to request a jury instruction on the topic of the testimony of a paid informant. Paper No. 10 at 14 & 15. The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971). In *Wainwright v. Sykes*, 433 U.S. 72 (1977), the Court held that consideration of a claim in a petition for habeas corpus can be barred by failure to comply with state procedural rules, unless the petitioner makes a showing of cause for the failure and prejudice resulting from the failure. Thus, claims which have never been presented in the state courts--or claims which were not exhausted properly in the state courts--are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules. *See Collier v. Jones*, 910 F.2d 770 (11th Cir. 1990). This procedural bar applies when the state court has found procedural default regardless of whether it has also discussed the merits, as long as the court has explicitly invoked state procedural rule as the basis for its decision. *See Harris v. Reed*, 489 U.S. 255, 264, n.10 (1989); *Ahe v. Styles*, 39 F.3d 80 (4th Cir. 1994). The *Harris* Court emphasized that a federal court has the responsibility to determine whether a state court in fact based its denial of relief on procedural grounds.

The court agrees with Respondents that Petitioner's claim regarding ineffective assistance of counsel in failing to request a jury instruction has been procedurally defaulted.[3] Judge Finan found that Petitioner had waived this claim because he did not raise a challenge to the jury instructions on direct appeal of his convictions.

Even where a claim has been procedurally defaulted, this court must still consider whether it should reach the merits of the defaulted claim in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298 (1995). The miscarriage of justice standard is directly linked to innocence. *Id.* at 320. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id.* at 314. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup*, *supra*. To meet this standard a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 327.

> *Schlup* observes that
>
> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.

*Id.* at 323.[4]

---

[3] Respondents also argue that Petitioner did not raise this precise claim before the state-post conviction court.

[4] The Supreme Court has recently elucidated on this standard, concluding that: (i) while the gateway claim requires new reliable evidence not presented at trial, the habeas court must assess the likely impact of all the evidence on reasonable jurors; and (ii) rather than requiring absolute certainty about guilt or innocence, a petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of new evidence, no reasonable juror would find him guilty beyond a reasonable doubt. *See House v. Bell*, __ S.Ct. __, 2006

8

On March 1, 2006, the court entered an Order affording Petitioner an opportunity to demonstrate the existence of cause for his failure to properly raise this claim in the state courts and prejudice resulting from this failure. Paper No. 11. In his Reply, Petitioner argues that the claim raised here is the same claim raised in his original post-conviction petition. Paper No. 12. He asserts that the ground submitted in the original post-conviction petition contained a typographical error and was corrected and accepted by the post-conviction court. *Id*. He maintains that Judge Finan erred in concluding that the ground was waived. *Id*.

The court finds that the claim is procedurally defaulted, as Judge Finan considered the ground waived under Maryland case law. Petitioner has failed to make the requisite showing which would enable this court to consider this claim of ineffective assistance of counsel based on a failure to request an applicable jury instruction. Paper No. 12 at 4-6. He has presented no evidence, nor suggested that any exists, which could satisfy the difficult standard set forth in *Schlup*. *Id*. Petitioner's procedurally defaulted claim is, therefore, foreclosed from federal habeas review.[5]

---

WL 1584475, *13 (U.S. June 12, 2006).

    [5] Petitioner claims that counsel erred by failing to request the Maryland Criminal Pattern Jury Instruction regarding the testimony of a State witness who has testified as a result of plea agreement or financial benefit and the caution with which such testimony is to be viewed.
    At trial the State produced Franklin White as a witness. During opening statement the State acknowledged that Franklin White was paid for his services and is a confidential informant. Paper No. 10, Ex. 2 at 45. Also, during his opening argument defense counsel made particular reference to White as an "snitch" or "assistant" for the State and discussed the sufficiency of the State's case in light of its reliance on White's testimony. *Id*., Ex. 2 at 47-48. During their direct examinations: (i) Cpl. Sivic acknowledged that White was a confidential informant for the Narcotics Task Force; and (ii) White readily testified to being a paid informant and a drug user, and to being convicted of forgery. *Id*., Ex. 2 at 71, 163-16, & 179. Further, on cross-examination, Petitioner's counsel grilled White about his history of drug use and his convictions for the sale of drugs and uttering. *Id*., Ex. 2 at 180-185. Counsel further examined White about the contract he had with the State to provide information. *Id*., Ex. 2 at 192-93. During closing argument, defense counsel hammered away at White's credibility. *Id*., Ex. 3 at 17-19. Finally, Judge Leasure informed the jury about White's uttering and drug convictions and sentences, *id*., Ex. 2 at 207; Ex. 3 at 2, and instructed the jury with regard to the credibility of a witness with "an interest in the outcome of [the] verdict." *Id*., Ex. 2 at 238.
    The record therefore reveals that the jury was well informed of White's relationship with the police and prosecution, along with his criminal history, and was adequately instructed on the credibility of a witness who had a vested interest in the outcome. Consequently, even if the claim had been properly raised in the

### III.  Standard for § 2254 Review

Because this Petition was filed after April 24, 1996, it is to be decided under amendments to the habeas corpus statutes contained in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003); *Beck v. Angelone*, 261 F.3d 377, 380 n.3 (4th Cir. 2001).  AEDPA modified the federal court's role in habeas proceedings in order to prevent federal "retrials" and to ensure that state court convictions are given effect to the extent possible under law.  *See Bell v. Cone*, 535 U.S. 685, 693 (2002).  Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

>  1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
>  2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curium*).  In *Williams v. Taylor*, 529 U.S. 362 (2000), Justice O'Connor explained that a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412-413.  A state court decision is based on an "unreasonable application" of clearly established federal law when "the state

---

state courts, it would entitle Petitioner to no relief here. Petitioner has not offered any evidence that counsel's performance was deficient or that the result of the trial would have been different but for the failure to introduce the specific Maryland Criminal Pattern Jury Instruction.

court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

Further, federal courts must give great deference to a state court's factual findings. *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

With these standards in mind, the court will address the merits of Petitioner's non-defaulted claims.[6]

### Ground Two: Violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

During defense counsel's cross-examination of Officer Sivic surrounding the circumstances of Petitioner's arrest, the following transpired:

    Counsel:        Did you ever ask Mr. Amoroso when he was arrested or go into any
                    details about why suddenly Frank White appears?
    Officer Sivic:  Mr. Amoroso denied all knowledge of knowing Frank White.

Paper No. 10, Ex. 2 at 128.

---

[6] The court notes that Petitioner has couched these four grounds in terms of post-conviction court error. Such claims are not cognizable under 28 U.S.C. § 2254. *See Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (infirmities in state post-conviction proceedings cannot serve as a basis for federal habeas corpus relief). Notwithstanding Petitioner's characterization of the claims, the undersigned presumes he intends to have this court examine the underlying prosecutorial misconduct and ineffective assistance claims raised on state court collateral review.

11

Petitioner cites to this testimony and asserts that the prosecution violated *Brady* by not disclosing the fact that he made a statement to the police denying any knowledge of White. In his post-conviction decision, Judge Finan rejected the claim, stating that:

> Petitioner alleges that the State's failure to disclose defendant's statement denying knowledge of Mr. White was a *Brady* violation. This statement was not the type of material evidence that would have affected the outcome of the proceeding and was therefore not required to be disclosed by the State. Brady v. Maryland, 373 U.S. 83 (1963); U.S. v. Bagley, 473 U.S. 667 (1985).

Paper No. 10, Ex. 12 at 6.

Under *Brady* "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecutor." *Brady v. Maryland*, 373 U.S. at 87. In order for a failure to disclose exculpatory or favorable evidence to rise to a constitutional level, there must be a reasonable probability that the results of the proceeding would have been different had the evidence been disclosed. *See United States v. Bagley*, 473 U. S. 667, 682 (1985).

Judge Finan's ruling shall not be disturbed. Even if the State did not provide a statement that Petitioner made in a conversation with Officer Sivic, *Brady* does not compel the disclosure of evidence available to a defendant from other sources, including those discovered by the diligent investigation of defense counsel. *See Stockton v. Murray*, 41 F.3d 920, 927 (4th Cir. 1994). This would include a defendant's own statement made to police officers. *See Fullwood v. Lee*, 290 F.3d 663, 684 (4th Cir. 2002). Moreover, the court concurs with Judge Finan and concludes that Petitioner has failed to show how the undisclosed statement was favorable or material to his defense and would have changed the outcome of the trial. The alleged statement was not exculpatory. Petitioner later testified that when talking to the police he did not deny knowing informant White. Paper No. 10, Ex. 2 at 227. It was therefore for the jury to decide whether Petitioner knew or did not know White.

12

Petitioner has failed to establish that this particular issue was an important piece of the puzzle and needed to sustain his conviction. As noted by Respondents, the jury had trial evidence before it related to the testimony of five police officers with cumulative 20 years of undercover narcotics experience, body-wire tapes made during the multiple drug transactions, and drug lab reports confirming the cocaine substance. Upon review of the record, the court finds that Judge Finan's ruling comprises a reasonable application of Supreme Court precedent under 28 U.S.C. § 2254(d).

### Grounds Three: Petitioner's Sixth Amendment Claim

To establish a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a convicted defendant must demonstrate that his counsel's performance (1) "fell below an objective standard of reasonableness,"[7] and, if this hurdle is overcome, (2) that counsel's deficient performance prejudiced the defendant. *Id*. at 688, 692. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. The ultimate focus of the *Strickland* inquiry is on the "fundamental fairness of the proceeding whose result is being challenged." *Id*. at 696.

In evaluating whether counsel's performance fell below an objective standard of reasonableness, a court must consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688. In its analysis, a court must be "highly deferential," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal

---

[7] *See also Satcher v. Pruett*, 126 F.3d 561, 572 (4th Cir. 1997). This court's review of counsel's performance is highly deferential. *See Truesdale v. Moore*, 142 F.3d 749, 753 (4th Cir. 1998).

quotations omitted). A court must not use the benefit of hindsight to second-guess strategic decisions made by counsel unless they were unreasonable. *Id*. at 690.

With regard to the prejudice prong of *Strickland*, a defendant need not demonstrate that the outcome of the proceeding would have been different, but rather that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Petitioner contends that trial counsel's failure to move to sever his charges and to preserve the issue for appeal constituted ineffective assistance of counsel. In his post-conviction decision, Judge Finan found that trial counsel's decision not to sever the counts was based on sound trial strategy. The post-conviction court noted the following:

> Petitioner argues that, had counsel moved to sever the five counts, severance would have been mandated because the evidence of each count was not mutually admissible to each other count. Petitioner contends that counsel's failure to move to sever constituted ineffective assistance of counsel.
>
> The Court of Appeals has held that "in a jury case at least, whenever evidence on separate charges would not be mutually admissible, severance, if timely requested, is absolutely mandated as a matter of law." Wieland v. State, 101 Md. App. 1, 10 (1994), citing McKnight v. State, 280 Md. 604, 612 (1977). To be mutually admissible, each count must have special or substantial relevance beyond criminal propensity. Substantial relevance is not limited to the commonly found examples of motive, intent, absence of mistake, identity, or going to a common scheme or plan, but is on an "open-ended nature." Solomon v. State, 101 Md. App. 331, 354-5 (1994). The counts would have been mutually admissible to each other as "substantially relevant to some contested issue in the case." Solomon, 101 Md. App. at 355, citing State v. Faulkner, 314 Md. 630, 634 (1989). Since the evidence of each count would have been mutually admissible, the court would have discretion to determine whether the interests of judicial economy were outweighed by prejudice of joinder. Petitioner also fails to show that he was unduly prejudiced by joinder of

> the counts. Testimony at post-conviction hearing demonstrated that it was actually to the defendant's advantage to have only one trial.
>
> At the post conviction hearing, trial counsel testified that not severing the counts was a tactical decision because if one charge could be defended successfully, all would fall. Additionally, a conviction in one count would have qualified the defendant as a subsequent offender under the sentencing guidelines if he were found guilty of other counts. Petitioner fails to prove that counsel's decisions were not sound trial tactics.

Paper No. 10, Ex. 12 at 2-3.

The post conviction court's finding is supported by the record. Trial counsel testified at the post-conviction hearing that his decision not to move for severance was a tactical decision "because my experience has been if they involve the same defendant, the same witnesses, same facts, it's, it's going to be denied." *Id.*, Ex. 11 at 75. Counsel also testified that there was some benefit on having the counts tried together in order to have the jury assess the believability of the Franklin White as to one part of the body-wire tapes during the trial, because it could create issues of informant credibility as to all counts. *Id.*, Ex. 11 at 76. Finally, at the post-conviction hearing defense counsel offered cross-examination testimony that:

> "Ah, separate trials may or may not be beneficial to the client if you don't have a good defense at those separate trials. Ah, and in my experience it's always been that unless you have a reason, there's a different set of alleged victims or ah, witnesses or defense and if there's a co-defendant or something like that, that you're going to trial on the whole thing."

*Id.*, Ex. 11 at 80.

Absent clear and convincing evidence to the contrary, a claim that counsel's decision was premised on trial strategy cannot be disturbed. *See Evans v. Thompson*, 881 F.2d 117, 125 (4th Cir. 1989). Having examined the post-conviction court's ruling as well as having independently examined the record, this court is satisfied that in applying the *Strickland* standard to the instant allegations of trial counsel's allegedly deficient performance, Petitioner has not demonstrated that

counsel's performance was deficient or that he was prejudiced by the conduct of trial counsel. 28 U.S.C. § 2254(d). *See Stamper v. Muncie*, 944 F.2d 170, 178 (4th Cir. 1991) (challenge to counsel's trial decisions and/or tactics amounted to no more than "Monday morning quarter backing."). Accordingly, the court sees no reason to overturn Judge Finan's decision.[8]  His findings do not involve an unreasonable application of *Strickland* and more than satisfy the §2254(d) standard of review.  The post-conviction court's decision shall not be disturbed.

### Ground Four: Prosecutorial Misconduct

Petitioner claims the State knowingly used perjured testimony from Officer Pfaff to cover-up contradictions between the testimony of Officer Sivic and the charging document. When reviewing this claim, Judge Finan stated:

> Petitioner first alleges that the State knowingly used perjury because two of the State's witnesses, Officers Sivic and Pfaff, gave contradictory statements at trial. Petitioner states that Cpl. Sivic indicated on the original charging document affidavit that he was contacted by, and met with, a Confidential Informant on July 3, 2002, while at trial he testified that he was on vacation on July 3, 2002.  Officer Pfaff testified that he worked with and assisted Cpl. Sivic on July 3, 2002, thus contradicting Cpl. Sivic's statement at trial (but collaborating his affidavit).  These facts do not support the allegation that the State engaged in prosecutorial misconduct by knowingly introducing perjured testimony because there is no evidence that either officer committed perjury.

Paper No. 10, Ex. 12 at 5-6.

Judge Finan's ruling shall not be disturbed.  A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the outcome at trial.  *See United States v. Bagley*, 473 U.S. at 678; *United States v. Agurs*, 427 U.S. 97, 103 (1976); *accord Napue v. Illinois*,

---

[8]  As noted by the State on post-conviction argument, the failure to move to sever counts in a case such as Petitioner's may prove to be a wise trial tactic due to the potential for "radically" changing the guidelines with guilty convictions in each case and going into the next case potentially as a subsequent offender.  *See* Paper No. 10, Ex. 11 at 97-98.

360 U.S. 264, 265-72 (1959). Sivic testified that he was on vacation on July 3, 2002. Paper No. 10, Ex. 2 at 98. Pfaff testified that he "assisted" Sivic with a controlled purchase on July 3, 2002. *Id*., Ex. 2 at 139. In this instance, Petitioner has neither shown that the officer Pfaff's testimony regarding Sivic's physical presence on July 3, 2002, was perjurious or that it impacted on the jury's decision. Indeed the record shows while the testimonies may not have been consistent, it merely represented a difference between the officer's beliefs for purposes of issuance of the charging document and their witness testimony on the stand.

### Ground Five: Judge Finan's Analysis of Sixth Amendment Claims

Petitioner claims that the post-conviction court misapplied the prejudice component of *Strickland* by focusing "solely on [a] mere outcome determination, without attention to whether the result of the proceedings was fundamentally unfair or unreliable." Paper No. 1. As previously noted by this court, to the extent that Petitioner's claim is based on an alleged error in the state post-conviction proceeding, it should be rejected on the basis that it does not present a cognizable basis for habeas corpus review.[9]  *See Bryant v. Maryland*, 848 F.2d at 493.

### IV. Conclusion

In light of the foregoing, this Petition for habeas corpus relief shall be denied and the case shall be dismissed with prejudice. A separate Order follows.

Date:  June 13, 2006

/s/
_____
William M. Nickerson
United States District Judge

---

[9] Moreover, this court has found that Judge Finan properly applied the appropriate elemental standard set out under *Strickland*.